UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARL ALTENBURG,

               Plaintiff,

   v.

NEW ENTERPRISES LTD. and
SUBRAMANIAM SUBBIAH,

               Defendants.

Docket No.

**COMPLAINT**

Plaintiff Dr. Karl Altenburg, by and through his undersigned attorneys, Hoguet Newman Regal & Kenney, LLP, hereby alleges as follows:

## NATURE OF THE ACTION

1. As stated fully herein, Plaintiff brings the instant action alleging that Defendants New Enterprises Ltd. ("New Enterprises") and Dr. Subramaniam Subbiah ("Subbiah" and together with New Enterprises, the "Defendants") has intentionally and wrongfully retained possession of Plaintiff's shares of Bio-Signal Group Corp. ("BSG"), without full payment, pursuant to a Stock Purchase Agreement entered into by Plaintiff and Defendants (the "Parties") dated April 30, 2015 (the "SPA"), in contravention of the terms of the SPA and multiple requests from Plaintiff thereunder to pay the cash value owed to him under the SPA.

2. Plaintiff brings causes of action for breach of contract, conversion, replevin, and unjust enrichment, and requests the Court enter an Order directing Defendants to compensate Plaintiff in an amount not less than $345,030.31—*i.e.*, the agreed value of Plaintiff's shares.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

4. Personal jurisdiction and venue are predicated upon Section 4.6(b) of the SPA, which provides that "[a]ny legal action or other proceeding relating to this Agreement or the enforcement of any provision of this Agreement may be brought or otherwise commenced in any state or federal court located in NY, NY."

## CHOICE OF LAW

5. Section 4.6(a) of the SPA states that it "shall be construed in accordance with, and governed in all respects by, the internal laws of the State of Delaware (without giving effect to principles of conflicts of laws)."

## PARTIES

6. Plaintiff Dr. Karl Altenburg is an individual and a citizen of Germany residing at 107 Arthur Road, London SW19 7DR, United Kingdom.

7. Defendant New Enterprises Limited is a corporation organized and existing under the laws of the British Virgin Islands with its principal place of business located at 33 Moonbeam Walk, Singapore 277243.

8. As explicitly stated in the SPA, Defendant New Enterprises Limited was "owned solely by its Chairman Mr. Subbiah . . . ."

9. Defendant Subbiah is a natural person who, upon information and belief, resides at 104 Elm Street, Menlo Park, California 94025.

## FACTUAL ALLEGATIONS

### A. Background Facts

10.     The Parties are shareholders and former shareholders of BSG Corp. f/k/a Bio-Signal Group Corp. ("BSG").

11.     BSG is a company at the cutting edge of neurological medical device innovation, including through its microEEG® product, which facilitates rapid brain scans.

12.     Subbiah was formerly on the Board of Directors of BSG and formerly interim-CEO of BSG.

13.     Subbiah was also, at all relevant times, the principal, Chairman, and sole owner of New Enterprises, and he personally signed the SPA at issue here.

14.     Upon information and belief, New Enterprises is a Singaporean operated entity incorporated in the British Virgin Islands.

15.     Upon information and belief, New Enterprises is owned and managed by Subbiah's family and Subbiah has used New Enterprises as a vehicle for his private investment schemes.

### B. Background of the Stock Purchase Agreement

16.     Plaintiff and several of his associates, namely: Messrs. Andreas Buchholz, Peter Buchholz, Thomas Heymann, and Wolfram Wordemann (together with Plaintiff, the "Investor Parties") were, at one time, shareholders of BSG.

17.     New Enterprises was also a shareholder of BSG at this time.

18.     Upon information and belief, Subbiah was, at the time, pursuing a scheme for New Enterprises to purchase shares of other BSG minority shareholders to consolidate New Enterprises' shareholding block and power.

19. Subbiah approached the Investor Parties about purchasing their shares in BSG.

20. Subbiah proposed to buy the shares with an under-market purchase amount, but the Investor Parties that New Enterprises would make later payments to make them whole.

21. Subbiah also offered terms that included valuation provisions for New Enterprises to pay the Investor Parties additional funds based on BSG's (anticipated) increased value, to protect the Investor Parties' downside risk.

22. New Enterprises owes an additional payment for the BSG shares that it acquired from the Investor Parties at a reduced purchase price.

23. The Investor Parties made written demand for these funds, but New Enterprises has refused to answer any demand.

24. Since then, Plaintiff Dr. Karl Altenburg has purchased the claims of the other Investor Parties, who have assigned their rights to him, the sole Plaintiff in this action.

C. **New Enterprises' Obligation Under the Stock Purchase Agreement**

25. On April 30, 2015, Defendants and the Investor Parties entered into the SPA. A true and accurate copy of the SPA is attached hereto as Exhibit A.

26. The SPA expressly states that New Enterprises is "owned solely by its Chairman Mr. Subbiah." Ex. A at p.1. Subbiah executed the SPA as signatory for New Enterprises. Ex. A at p.11.

27. The SPA defines "Purchase Price" as "[t]he aggregate purchase price payable by [Defendants]." Ex. A § 1.3(a).

28. Defendants paid the first installment of the Purchase Price, the "Initial Share Purchase Price" of $500,000 at closing. *Id.*

29. The SPA defines "Subsequent Share Purchase Price Installment" as "the second installment of the Purchase Price."

30. This is to be paid if certain contingencies occur, or if not paid, the Investor Parties could at their discretion request several options three years after entry into the SPA.

31. The contingencies did not occur. Specifically, BSG did not "issue[] new shares" nor did "any of its current shareholders, including the Purchaser, transfers to a third Party based on a valuation of at least $13,500,000." Ex. A § 1.3(c).

32. Because Defendants "ha[d] not paid the Subsequent Share Purchase Price Installment by the 3rd anniversary of the Closing Date (the 'Anniversary Date')"—*i.e.*, by April 30, 2018—the Investor Parties were entitled to request at their discretion several options "depending on the fair market value of [Bio-Signal] on the Anniversary Date (the '3rd Yr. FMV')". Ex. A § 1.3(h).

33. One of these options is a "Call Option," which required Defendants' retransfer of shares or payment to the Investor Parties of the value of these shares.

34. Specifically, upon exercise of the Call Option, Defendants must "return to [Plaintiff] such proportion of the Transferred Shares (the 'Retransferring Shares') free of charge, which at the Valuation of 10,500,000 USD had not been paid by [Defendants] by the Initial Purchase Price (i.e. 767,480/1,267,480 of the Transferred Shares)."

35. Upon information and belief, the "3rd Yr. FMV"—*i.e.*, the valuation of Bio-Signal as of April 30, 2018—was below $10,500,000.

36. Section 1.3(h)(B) outlines Plaintiff's options if the 3rd Yr. FMV of Bio-Signal was below 10,500,000.

37. Plaintiff could exercise the Call Option, under the initial terms of the SPA, at any time either on or after April 30, 2018 (the Anniversary) or on or after April 30, 2019 (12 months after the Anniversary, pursuant to Section 1.3(h)(B)(i) of the SPA).

38. The Call Option has no expiration and is unlimited as to when it can be exercised by the plain terms of the SPA. Ex. A § 1.3(h).

39. Section 1.3(h) of the SPA does not contain a "notice or other communication" requirement that would be governed by Section 4.3 of the SPA. *See* Ex. A § 4.3.

40. When the three-year anniversary occurred, rather than retransfer the shares or pay the Investor Parties, "[Defendants] ke[pt] all Transferred Shares for another 12 months, it being understood that after such period the Call Option applies again and the valuation will be based on the date following 12 months after the Anniversary." Ex. A § 1.3(h)(B)(i).

**D. Extension of Payment Terms**

41. The Investor Parties and Subbiah corresponded in 2019 regarding the timeline for New Enterprises' outstanding payment or retransfer of shares under the SPA and agreed to extend the term by five (5) years.

42. On or around April 4, 2019, Subbiah emailed Andreas Buchoholz offering to extend the term of the SPA out by five years from the date of the Anniversary—*i.e.*, extending the Anniversary date from April 30, 2018 to April 30, 2023.

43. On or around April 11, 2019, Buchholz accepted Defendants' offer to extend the Anniversary under the SPA to April 30, 2023 on behalf of all shareholders under the SPA.

44. The Parties' offer and acceptance occurred in April 2019

45. Plaintiff could exercise the Call Option, under the renewed terms of the SPA, at any time either on or after April 30, 2023 (the revised Anniversary).

### E. Demand and Refusal

46. The SPA's terms fixed a minimum value of the retransfer or payment.

47. Pursuant to sections 1.3(h)(B)(ii)(a)-(c) of the SPA, the Parties agreed that (1) Bio-Signal was valued at $7,000,000 as of the closing date, April 30,2015; (2) the Initial Share Purchase Price is based on a valuation of 100% of the shares purchased under the SPA on the closing date of $4,141,863.25; and (3) "as a result, [Defendants] will have to retransfer to [Plaintiff] Shares representing a value of 345,030.31 USD." *Id.*

48. Section 1.3(h)(B)(ii)(d) further states that Defendants "shall – in [their] free discretion – have the right to avoid the retransfer of such Shares by paying to [Plaintiff] the amount of 345,030.01 USD."

49. On January 24, 2024, Plaintiff sent a letter to New Enterprises formally demanding payment of $345,030.31 pursuant to Section 1.3(h)(B)(ii) of the SPA. A true and accurate copy of this letter is attached hereto as Exhibit B.

50. Although, as stated, Section 1.3(h) does not contain a notice requirement, Plaintiff's January 24, 2024 letter complies with the notice requirements outlined in Section 4.3 of the SPA, because the letter is "in writing" and was "delivered . . . to the address or facsimile number set forth beneath the name of" New Enterprises in the SPA. Ex. A § 4.3.

51. As of the date of this filing, Defendants have not responded to Plaintiff's January 24, 2024 letter, nor furnished on Plaintiff payment of the amount requested in that letter.

52. On May 21, 2024, Plaintiff sent a follow-up letter to BSG, with a copy to New Enterprises, demanding "immediate retransfer of a total of 9.537 shares" pursuant to Section 1.3(h)(B)(ii)(c) of the SPA. A true and accurate copy of this letter is attached hereto as Exhibit C.

53. Plaintiff sent this letter to try to mitigate damages from Defendants' breach of their obligation to pay $345,030.31, explaining that this demand for 9.537 shares was based on the valuation of the BSG shares as specified in Section 1.3(h)(B)(ii) of the SPA.

54. Plaintiff's May 21, 2024 letter likewise complies with the notice requirements of Section 4.3 of the SPA.

55. As of the date of this filing, Defendants have not responded to either of Plaintiff's demand letters.

### FIRST CAUSE OF ACTION
### (Breach of Contract Against All Defendants)

56. Plaintiff repeats and realleges each of the foregoing paragraphs of the complaint as if fully set forth herein.

57. At all relevant times following April 30, 2023, Plaintiff had the right to exercise the Call Option and either demand return of his shares under the SPA or, alternatively, demand payment of the monetary value of his shares as determined by the SPA.

58. The Call Option provided by Section 1.3(h) of the SPA creates an obligation for Defendants either to effectuate transfer of Plaintiff's shares or pay Plaintiff the monetary value of his shares upon request.

59. The Call Option provided by Section 1.3(h) of the SPA is unlimited as to when it can be exercised.

60. Given that the SPA explicitly states that Plaintiff "shall be entitled to [exercise the Call Option] at [his] discretion", the Call Option is unlimited in its duration and so the common law rule implying a reasonable time in the absence of a time provision has no application.

61. Between April 30, 2015, and January 24, 2024, Plaintiff acquired ownership of all shares granted under the SPA.

62. On January 24, 2024, Plaintiff exercised the Call Option by requesting payment of $345,030.31 pursuant to Section 1.3(h)(b)(ii) of the SPA.

63. At all relevant times—*i.e.*, when the SPA was first executed, when was renewed and extended for another 5-year period, and when Plaintiff exercised the Call Option—Subbiah was the sole owner and decision-maker for New Enterprises, which served as an alter ego or mere instrumentality for Subbiah.

64. By failing to furnish payment pursuant to the SPA as demanded in Plaintiff's January 24, 2024 letter, Defendants breached their obligations to Plaintiff under the SPA.

65. As a result of Defendants' conduct, Plaintiff has been and will continue to be injured, for which Plaintiff is entitled to recover compensatory damages and interest in an amount as valuation by an expert and proof at trial may warrant, but not less than $345,030.31, as well as punitive damages in an amount as proof at trial may warrant.

66. Plaintiff is entitled to recover all monies expended to enforce his rights under the SPA as special damages, including attorney's fees, costs and disbursements pursuant to Section 4.2 of the SPA.

## SECOND CAUSE OF ACTION
**(Conversion Against All Defendants)**

67. Plaintiff repeats and realleges each of the foregoing paragraphs of the complaint as if fully set forth herein.

68. At all relevant times following April 30, 2023, Plaintiff had the right to exercise the Call Option and either demand return of his shares under the SPA or, alternatively, demand payment of the monetary value of his shares as determined by the SPA.

69. The Call Option provided by Section 1.3(h) of the SPA is unlimited as to when it can be exercised.

70. Given that the SPA explicitly states that Plaintiff "shall be entitled to [exercise the Call Option] at [his] discretion", the Call Option is unlimited in its duration and so the common law rule implying a reasonable time in the absence of a time provision has no application.

71. Between April 30, 2015, and January 24, 2024, Plaintiff acquired ownership of all shares granted under the SPA.

72. On January 24, 2024, Plaintiff exercised the Call Option by requesting payment of $345,030.31 pursuant to Section 1.3(h)(b)(ii) of the SPA.

73. At all relevant times—*i.e.*, when the SPA was first executed, when was renewed and extended for another 5-year period, and when Plaintiff exercised the Call Option—Subbiah was the sole owner and decision-maker for New Enterprises, which served as an alter ego or mere instrumentality for Subbiah.

74. As of January 24, 2024, Defendants intentionally assumed control over Plaintiff's shares by failing to execute Plaintiff's instruction to tender payment under the terms of the SPA, thus retaining possession of the value of Plaintiff's shares under the SPA.

75. Defendants have maintained their possession of the shares to the exclusion of Plaintiff's rights.

76. As a result of Defendants' intentional and wrongful conduct, Plaintiff has been and will continue to be injured, for which Plaintiff is entitled to recover compensatory damages and interest in an amount as valuation by an expert and proof at trial may warrant, but not less than $345,030.31, as well as punitive damages in an amount as proof at trail may warrant.

77. Plaintiff is entitled to recover all monies expended to recover converted property or the monetary value thereof, as special damages, including attorney's fees, costs and disbursements pursuant to Section 4.2 of the SPA.

## THIRD CAUSE OF ACTION
**(Replevin Against All Defendants)**

78. Plaintiff repeats and realleges each of the foregoing paragraphs of the complaint as if fully set forth herein.

79. At all relevant times following April 30, 2023, Plaintiff had the right to exercise the Call Option and either demand return of his shares under the SPA or, alternatively, demand payment of the monetary value of his shares as determined by the SPA.

80. The Call Option provided by Section 1.3(h) of the SPA is unlimited as to when it can be exercised.

81. Given that the SPA explicitly states that Plaintiff "shall be entitled to [exercise the Call Option] at [his] discretion", the Call Option is unlimited in its duration and so the common law rule implying a reasonable time in the absence of a time provision has no application.

82. Between April 30, 2015, and January 24, 2024, Plaintiff acquired ownership of all shares granted under the SPA.

83. On January 24, 2024, Plaintiff exercised the Call Option by requesting payment of $345,030.31 pursuant to Section 1.3(h)(b)(ii) of the SPA.

84. At all relevant times—*i.e.*, when the SPA was first executed, when was renewed and extended for another 5-year period, and when Plaintiff exercised the Call Option—Subbiah was the sole owner and decision-maker for New Enterprises, which served as an alter ego or mere instrumentality for Subbiah.

85. As of January 24, 2024, Defendants intentionally assumed control over Plaintiff's shares by failing to execute Plaintiff's instruction to tender payment under the terms of the SPA, thus retaining possession of the value of Plaintiff's shares under the SPA.

86. Defendants have maintained their possession of Plaintiff's shares to the exclusion of Plaintiff's rights.

87. As of the date of this filing, Defendants continue to wrongfully possess Plaintiff's shares.

88. Plaintiff has repeatedly requested return of his shares under the SPA or payment of the monetary value of his shares as determined by the SPA.

89. Plaintiff is entitled to recover, in the alternative to the $345,030.31 owed him pursuant to the SPA, the immediate transfer of his shares under the SPA.

90. Plaintiff is entitled to recover all monies expended to recover his shares as special damages, including attorney's fees, costs and disbursements pursuant to Section 4.2 of the SPA.

## FOURTH CAUSE OF ACTION
**(Unjust Enrichment Against All Defendants)**

91. Plaintiff repeats and realleges each of the foregoing paragraphs of the complaint as if fully set forth herein.

92. Defendants have retained possession of Plaintiff's shares and the monetary value thereof, against Plaintiff's express instruction.

93. Defendants therefore have been unjustly enriched, at Plaintiff's expense, by their continued retention of the shares.

94. Equity and good conscience require that Defendants relinquish possession of the shares or otherwise compensate Plaintiff in an amount not less than $345,030.31.

95. As a result, Plaintiff has been damaged in an amount, as valuation by an expert and proof at trial may warrant, but not less than $345,030.31, plus all fees, costs, attorney's fees, and pre-judgment interest, to the extent available under applicable law.

**WHEREFORE**, Plaintiff respectfully requests the Court enter judgement as follows:

    A.    Awarding Plaintiff damages in an amount to be determined at trial, but not less than $345,030.31;

    B.    In the alternative, for a prejudgment attachment of Plaintiff's shares in the amount of $345,030.31, and an Order directing Defendants to return Plaintiff's shares pursuant to the SPA and Plaintiff's multiple demands for the same;

    C.    Awarding Plaintiff all attorney's fees, costs, disbursements, and pre-judgement interest, to the extent applicable under law; and

    D.    Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       October 14, 2025

                                      HOGUET NEWMAN
                                      REGAL & KENNEY, LLP

                    By: _____
                                      Siddartha Rao
                                      Connor G. Shea
                                      One Grand Central Place
                                      60 East 42nd Street, 48th Floor
                                      New York, New York 10165
                                      Tel.: 212-689-8808
                                      Fax: 212-689-5101
                                      *Attorneys for Plaintiff*